

# NUMBER 13-12-00629-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

ROD LEWIS,                                                                         Appellant,

v.

LOWE'S HOME CENTERS, INC.,

                                                                                  Appellee.

---

**On appeal from the 347th District Court
of Nueces County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Benavides, Perkes, and Longoria
Memorandum Opinion by Justice Perkes**

Appellant Rod Lewis brought suit against appellee Lowe's Home Centers, Inc.

(Lowe's) for, among other things, retaliatory discharge under the Texas Commission on

Human Rights Act (TCHRA), alleging Lowe's terminated Lewis's employment because

he reported sexual harassment. The sexual-harassment allegation related to a physical

altercation between Lewis and another Lowe's employee.   The trial court granted Lowe's

motion for traditional summary judgment on Lewis's retaliatory discharge claim.   By three

issues, Lewis argues summary judgment was improper because Lewis raised a genuine

issue of material fact on (1) whether Lewis engaged in protected activity under the

TCHRA; (2) causation; and (3) whether Lowe's explanation for termination was a pretext.

We affirm.

## I.  BACKGROUND

Lewis was a district manager for Lowe's.   On August 19, 2009, Lewis attended a

district manager and regional staff meeting.   During a break at the meeting, there was a

physical altercation between Lewis and Rocky Jarvis, a regional staff member.   Other

district and regional staff members at the meeting heard loud voices.   In response to the

altercation, Teresa Johnson, the regional vice-president, and Terry Gillespie, a regional

human resources manager, talked to Jarvis and Lewis and requested Lewis, Jarvis, and

the other witnesses submit written reports describing the altercation.

That same day, Lewis emailed his written report, which provided in full:

On Wednesday, August 19, 2009 we were having a 2nd Qtr Regional DM/Staff Meeting.   At approximately 10:00 am, we were given a 5 minute break.   Rocky exited the conference room and I behind him.   I said to Rocky, "Pick it up buddy, let's go.   Your [sic] walking like a staff member[."] He got angry and said I take offence [sic] to that.   He followed me to the coffee pot, very upset.   I thought Rocky was playing at first.   I then realized he was not playing, I said Rocky stop, settle down.   He continued to raise his voice, talking about how angry he was.   I tried to remove myself from the situation stepping backward away from him.   He began to leave the kitchen and then came back.   He continued yelling, I looked away from him not saying anything.   He put both his hands on my face so as to turn my face toward him.   I stepped backward again and said, Rocky stop.   At this time he left the kitchen and office still very upset.

2

Jarvis wrote two reports, and in both he alleged Lewis provoked the altercation by making provocative remarks and pushing Jarvis. Lewis denies pushing Jarvis.

According to Johnson's deposition testimony, the regional staff became concerned in July 2009 on discovering that Lewis implemented unauthorized discounts in his district's stores. Johnson testified that she also learned that Lewis had spread rumors about Gillespie and another Lowe's employee to Johnson's personal administrative assistant and that Lewis had asked the administrative assistant to investigate his claims. Johnson considered Lewis's alleged rumors and request to a non-salaried administrative assistant, rather than to herself, to be inappropriate. Johnson testified that because of her concerns, she and Lester Arnold, the Divisional Human Resources Director, decided to discipline Lewis. They planned to meet with him at the August 19, 2009 meeting and administer to him a "Final Notice," Lowe's most severe disciplinary measure.

In Lowe's summary-judgment motion, Lowe's included a copy of an email from Johnson to Arnold, dated August 18, 2009, that included a "Final Notice" form. The form states, "Rod has demonstrated negligent and unprofessional conduct in his role as a District Manager." The exhibit also includes Arnold's responsive email sent at 7:59 a.m. on August 19, 2009. Arnold recommended Johnson change the wording in the notice and include the details of Lewis's unauthorized discounts and "unauthorized investigation into alleged misconduct involving members of the regional staff which were false."

Later that morning, the altercation between Jarvis and Lewis occurred. Johnson testified that she and Arnold decided to postpone the conversation with Lewis regarding the conduct outlined in the final notice, and they did not give Lewis the final notice on that

3

date as planned. Johnson testified that Arnold concluded from his investigation of the altercation that Lewis initiated it. According to Johnson, that conclusion, combined with the concerns of Lewis's other conduct, convinced Arnold to terminate Lewis's employment. Lowe's officially terminated Lewis's employment on September 3, 2009.

Lewis challenges the veracity of the claims that Lowe's terminated his employment for spreading rumors, for asking Johnson's administrative assistant to investigate the alleged improprieties of co-workers, and for his alleged administration of unauthorized discounts or promotions in his district. Lewis brought suit against Lowe's for terminating him in retaliation for his August 19, 2009 email about the altercation, which he characterizes as a complaint of sexual harassment.

## II. STANDARD OF REVIEW

We review a grant of traditional summary judgment de novo. *State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in United States Currency ($90,235)*, 390 S.W.3d 289, 292 (Tex. 2013); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We take as true all evidence in favor of the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating*, 164 S.W.3d at 661; *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004). When, as here, the trial court's order does not specify the grounds on which it was granted, we affirm the order if any of the asserted grounds are meritorious. *$90,235*, 390 S.W.3d at 292; *Joe*, 145 S.W.3d at 157. The party moving for traditional summary judgment has the burden to prove there is no genuine issue of

4

material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *$90,235*, 390 S.W.3d at 292; *Joe*, 145 S.W.3d at 157.

## III.   PROTECTED ACTIVITY

> Employment-discrimination cases employ a unique burden-shifting analysis:   first, the employee must prove his prima facie case, which entitles him to a presumption of discrimination; then the burden shifts to the employer to present evidence of a legitimate, nondiscriminatory reason for its action; once the employer has articulated such reason, the burden shifts back to the plaintiff to prove that the reason is merely a pretext for discrimination.

*Tex. Dep't of Criminal Justice v. Cooke*, 149 S.W.3d 700, 705 (Tex. App.—Austin 2004, no pet.); *see Tex. Dep't of Human Servs. of Tex. v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1995); *Romo v. Tex. Dep't of Transp*., 48 S.W.3d 265, 270 (Tex. App.—San Antonio, 2001, no pet.); *see also Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) (discussing Texas's adoption of the federal burden-shifting analysis for TCHRA employment-discrimination cases that have not been tried on the merits); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000) (per curiam) (same).

To establish a prima facie case of retaliatory discharge under the TCHRA, a plaintiff must show:   (1) the plaintiff engaged in a protected activity; (2) an adverse employment action occurred; and (3) there was a causal connection between participation in the protected activity and the adverse employment decision.   *See Wal-Mart Stores, Inc. v. Lane*, 31 S.W.3d 282, 295 (Tex. App.—Corpus Christi 2000, pet. denied); *see also Cox & Smith Inc. v. Cook*, 974 S.W.2d 217, 222–24 (Tex. App.—San Antonio 1998, pet. denied).   By his first issue, Lewis contends the evidence raises a genuine issue of

5

material fact on whether he engaged in protected activity by making a good-faith report of conduct he reasonably believed to be sexual harassment.

## A. Applicable Law

Opposing an employer's discriminatory practice is protected activity under the TCHRA. TEX. LAB. CODE ANN. § 21.055(1) (West, Westlaw through 2013 3d C.S.); *Cox & Smith*, 974 S.W.2d at 223–24. "The discriminatory practices made unlawful under the [TCHRA] include adverse employment decisions based on race, color, disability, religion, sex, national origin, or age." *City of Waco v. Lopez*, 259 S.W.3d 147, 151 (Tex. 2008); *see* TEX. LAB. CODE ANN. § 21.051 (West, Westlaw through 2013 3d C.S.). "Sexual harassment is one form of sex discrimination that is prohibited . . . ." *City of San Antonio v. Cancel*, 261 S.W.3d 778, 783 (Tex. App.—San Antonio 2008, pet. denied); *see Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 (Tex. 2010) (citations omitted). "There are two general types of sexual harassment: quid pro quo and hostile work environment." *Williams*, 313 S.W.3d at 804 (citing *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 n.5 (Tex. 2004)).

To establish the employee opposed a discriminatory practice, the employee must demonstrate he reported an activity in good faith and reasonably believed the employer violated the law. *Cox & Smith*, 974 S.W.2d at 224. To avoid chilling the legitimate assertion of employee rights, courts do not require that an employee prove the actual discrimination; instead, to establish a prima facie case, a plaintiff need only show he had a reasonable belief that the employer engaged in unlawful employment practices. *See Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1137–40 (5th Cir.

6

1981);[1] *Lopez*, 259 S.W.3d at 151; *Cox & Smith*, 974 S.W.2d at 224. "Reasonable belief" has both subjective and objective components; "a plaintiff must not only show that he subjectively (that is, in good faith) believed that his employer engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the facts and record presented." *Cox & Smith*, 974 S.W.2d at 225–26 (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). "'Subjective beliefs of discrimination alone are insufficient to establish a prima facie case.'" *Romo*, 48 S.W.3d at 270 (quoting *Farrington v. Sysco Food Servs., Inc.*, 865 S.W.2d 247, 251 (Tex. App.—Houston [1st Dist.] 1993, writ denied)); *see M.D. Anderson*, 28 S.W.3d at 25.

In a retaliation case, the plaintiff employee must, in addition to showing a reasonable belief that the employer engaged in unlawful employment practices, show the plaintiff reported the challenged activity to the employer. *Cox & Smith*, 974 S.W.2d at 224. The report must have complained of some sort of discrimination covered by the TCHRA. *Spinks v. Trugreen Landcare, L.L.C.*, 322 F.Supp.2d 784, 796 (S.D. Tex. 2004) (citing *Azubuike v. Fiesta Mart*, 970 S.W.2d 60, 65 (Tex. App.—Houston [14th Dist.] 1998, no pet.)); *see County of Travis ex. rel. Hamilton v. Manion*, No. 03-11-00533-CV, 2012 WL 1839399, at *8 (Tex. App.—Austin May 17, 2012, no pet.) (mem. op.); *Martinez v. Wilson County*, No. 04-09-00233-CV, 2010 WL 114407, at *3 (Tex. App.—San Antonio

---

[1] "'Because our state statute tracks the federal counterpart in title VII of chapter 42 of the United States Code, we may consider analogous federal case law in the interpretation and application of our Texas statute.'" *Romo v. Tex. Dep't of Transp.*, 48 S.W.3d 265, 269–70 (Tex. App.—San Antonio 2001, no pet.) (quoting *Graves v. Komet*, 982 S.W.2d 551, 554 (Tex. App.—San Antonio 1998, no pet.)); *see M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000).

Jan. 13, 2010, no pet.) (mem. op.).   The report need not contain the specific legal terms; as noted by the Seventh Circuit:

> There is no legal mandate that an employee use a specific term "sexual harassment" in order to inform his or her employer about a harasser in the workplace.   Some employees may not be conversant or comfortable with the term and we should not place a language requirement on an employee when he or she is already presumably facing a difficult situation.

*Gentry v. Export Packaging Co.*, 238 F.3d 842, 849 (7th Cir. 2001).   Complaining about behavior that alerts the employer about potential harassment is sufficient.   *Id.*

The report must, however, contain sufficient description to at least alert an employer of what discriminatory practice the employee reasonably believes occurred; "[a] vague charge of discrimination will not invoke the protection under the statute."   *Spinks*, 322 F.Supp.2d at 797; *Manion*, 2012 WL 1839399, at *8; *Martinez*, 2010 WL 114407, at *3.   "Although an employee need not use . . . magic words," the employee must "at least say something to indicate" what alleged discriminatory conduct is at issue.   *Sitar v. India Dep't of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003).   "An employee can honestly believe [he or] she is the object of discrimination, but if [he or] she never mentions it, a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints."   *Id.* (citations omitted); *see Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) (per curiam) ("Magic words are not required, but protected opposition must at least alert an employer to an employee's reasonable belief that unlawful discrimination is at issue."); *Harris-Childs v. Medco Health Solutions, Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006) (per curiam) (holding plaintiff failed to establish a prima

8

facie case of retaliation because, although the plaintiff complained of "unfair treatment," the plaintiff's complaint failed to "put the employer on notice" of discriminatory conduct).

## B.    Discussion

Reporting a physical altercation that is unprompted by proscribed discriminatory practices is not a protected activity under the TCHRA, whereas reporting sexual harassment is a protected activity under the TCHRA.   *See Williams*, 313 S.W.3d at 804; *Cancel*, 261 S.W.3d at 783.   At issue under the protected-activity element in this case is whether Lewis reasonably believed he was reporting sexual harassment.

In his August 19, 2009 email, Lewis did not mention sexual harassment, and, more importantly, his general characterization of the incident with Jarvis, consistent with the other employees' characterizations, was that it was a mere physical altercation. Assuming that Lewis subjectively believed he was reporting sexual harassment, there is still a "reasonable belief" requirement that the employee's subjective belief be objectively reasonable in light of the facts and record presented.   *Cox & Smith*, 974 S.W.2d at 225–26; *see Romo*, 48 S.W.3d at 270 ("Subjective beliefs of discrimination alone are insufficient to establish a prima facie case.").[2]

Lewis insists his belief was objectively reasonable because Lowe's policy against sexual harassment defined sexual harassment to include any "[t]ouching or other physical contact with an individual that is not welcomed."   That definition appears on a list with ten other "kinds of behavior" that the Human Resources Management Guide for Lowe's

---

[2] In his deposition testimony, Lewis testified that he subjectively believed Jarvis sexually harassed him.   Although this testimony may be some evidence of Lewis's subjective belief, it does not show that it was objectively reasonable in light of the facts and record presented.

stated "may be considered forms of sexual harassment." The guide instructs that the list

is not exhaustive, and it proscribes "[a]ll types of offensive, hostile and intimidating

behavior . . . ." Lewis notes that he was trained under the Lowe's policy.

We are unpersuaded by Lewis's argument. The evidence shows the altercation

between Lewis and Jarvis was a physical altercation. We hold that Lewis would not be

objectively reasonable in believing that the fight was sexual harassment simply because

Lowe's anti-sexual-harassment policy contained broad sentences proscribing unwelcome

physical contact. In context, these sentences are surrounded by descriptions of sexual

conduct.[3] Neither do we believe Lewis's August 19, 2009 email, which Johnson and

---

[3] The relied-on sentences appear in the following excerpt from Lowe's Human Resources Management Guide, which discusses sexual harassment in full as follows:

> Company policy strictly prohibits sexual harassment of any kind. Sexual harassment may include any conduct of a sexual nature that is not welcome and makes a reasonable person feel that the work environment is intimidating, offensive or hostile. Sexual harassment may also include comments, threats or actions that display hostility toward a person in the workplace because of their gender.
>
> The following kinds of behavior may be considered forms of sexual harassment. These types of conduct are prohibited under this policy.
>
> 1. Requests that an employee agree to sexual advances as a basis for making employment decisions. For example, "If you don't go out with me, I'll fire you" or "If you go out with me, I'll give you that raise you have been seeking".
> 2. Other advances or propositions of a sexual nature.
> 3. Unwelcome sexual flirtations.
> 4. Graphic sexual statements about an individual's body.
> 5. Using sexual degrading words to describe an individual.
> 6. Gestures of an obscene or sexually suggestive nature.
> 7. Humor or jokes of a sexual nature.
> 8. Posters, pictures, cartoons, toys or objects of a sexual nature.
> 9. Leering or staring that is offensive.
> 10. Touching or other physical contact with an individual that is not welcomed.
> 11. Hostile comments toward employees in the workplace because of their gender. For example, "A woman's place is in the home".
>
> This list is not intended to be exclusive or all-inclusive. All types of offensive, hostile and intimidating behavior are prohibited by this policy.

10

Gillespie requested in investigating the altercation, provided notice to Lowe's that Lewis was making a sexual-harassment complaint.  *See Sitar*, 344 F.3d at 727; *Spinks*, 322 F.Supp.2d at 797; *Manion*, 2012 WL 1839399, at \*8; *Martinez*, 2010 WL 114407, at \*3.

On a separate note, a report on which a retaliatory discharge claim is premised must complain of some sort of discrimination covered by the TCHRA.  *See Spinks*, 322 F.Supp.2d at 796; *see also Manion*, 2012 WL 1839399, at \*8; *Martinez*, 2010 WL 114407, at \*3.  The discrimination covered by the TCHRA is statutorily defined.  *See* TEX. LAB. CODE ANN. § 21.05; *Lopez*, 259 S.W.3d at 151.  We decline Lewis's implicit invitation to allow a company's policies to expand the coverage of the TCHRA beyond the scope expressly delineated by the Legislature.

Because the evidence shows that Lewis would not be objectively reasonable in believing the physical altercation was sexual harassment and because the complained-of altercation is not the sort of discrimination covered by the TCHRA, Lewis failed to raise a genuine issue of material fact that he engaged in protected activity.  We overrule appellant's first issue.

By failing to establish he engaged in protected activity, Lewis failed to establish a prima facie case of retaliatory discharge under the TCHRA.  *See Lane*, 31 S.W.3d at 295; *Cox & Smith*, 974 S.W.2d at 223.  Therefore, we need not consider Lewis's second and third issues.[4]  *See Lane*, 31 S.W.3d at 295; *Cox & Smith*, 974 S.W.2d at 223.

---

[4] *See* TEX. R. APP. P. 47.1.

## IV.   CONCLUSION

We affirm the trial court's order granting summary judgment.

GREGORY T. PERKES
Justice

Delivered and filed the
26th day of June, 2014.